1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
9                       AT TACOMA

10

11    SEAN PIERRE ADAMS,                    CASE NO. 13-5260 RJB

            Plaintiff,                      ORDER ON DEFENDANTS'
12                                          MOTION FOR SUMMARY
                                            JUDGMENT
13       v.

14    PIERCE COUNTY, WASHINGTON,
      PIERCE COUNTY JUVENILE COURT,
15
            Defendants.
16

17          This matter comes before the Court on the Defendants' Motion for Summary Judgment.

18   (Dkt. 16) and Defendants' Motion to Strike (Dkt. 32).  The Court has considered the pleadings

     filed regarding the motions and the remaining file.
19

20          Plaintiff, an African-American, brings this employment discrimination case asserting

21   claims under federal and state law.  Dkt. 1.  Defendants' motion for an order summarily

     dismissing Plaintiff's state law claims for failing to comply with Washington's claim filing
22

23   statute, RCW 4.96.020 was granted, and those claims were dismissed.  Dkt. 15.  Defendants now

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 1

bring a motion for summary judgment as to Plaintiff's remaining federal claims.  Dkt. 16.  For the reasons set forth below, the motion should be granted and the case dismissed.

## I.     FACTS AND PROCEDURAL HISTORY

### A.  BACKGROUND FACTS

In 1999, Pierce County, Washington hired Plaintiff to work in the detention division of the Pierce County Juvenile Court.  Dkt. 1.  He is presently a Juvenile Detention Officer 2 ("JDO2").  Dkt. 18.

1.  JDO2 Duties

A JDO2 provides "custodial supervision and care for juvenile offenders" detained at the Pierce County Juvenile Detention Center.  Dkt. 18, at 3-4.  They are responsible for the "welfare, safety and security of the residents and for assuring that the juveniles are clean, fed, healthy, and safe."  Dkt. 18, at 4.  A JDO2 is "responsible for defusing, correcting and controlling acting out behavior, and for identifying potentially self-destructive behavior and intervening once it is identified."  Dkt. 18, at 4.  According to the job description, essential functions of the JDO2 position include "providing continuous monitoring of an assigned area," identifying residents who indicate self-destructive behavior," and "providing appropriate intervention."  Dkt. 18, at 4.  They must be able to "maintain mental alertness and powers of observation during the entire work shift."  Dkt. 18, at 4.

One of a JDO2's job duties is to conduct "probe" checks every 15 minutes on each child locked inside a cell.  Dkt. 20, at 3.  The JDO2 looks into the cell window and visually checks on the youth, and then touches a hand held electronic rod or probe to a sensor on the door, which records the date and time of the check.  Dkt. 20, at 3.

2.  <u>Plaintiff's Failure to do Probe Checks on July 17, 2009</u>

Plaintiff testified that although he did not know it at the time, he had a Transient Ischemic Attack ("TIA") while on duty the night of July 17, 2009 and did not do probe checks.  Dkt. 22, at 8.  Plaintiff acknowledged that the county did not know he had a TIA either.  Dkt. 22, at 8.

The Pierce County Juvenile Court Administrator, Shelly Malou, states that she became concerned because Plaintiff first reported that he had fallen asleep during the July 17, 2009 incident, and then later reported that he had "passed out."  Dkt. 20, at 4.  She asked Pierce County Human Resources ("HR") Department's EEO/ADA Specialist to follow up.  Dkt. 20, at 4.  The Court Administrator stated that she also decided to view the video of the incident.  Dkt. 20, at 4.  She stated she saw Plaintiff facing an overhead television monitor.  Dkt. 20, at 4-5.  At the end of the two hour period, another employee walked into the pod and appeared to say something and Plaintiff woke up.  Dkt. 20, at 5.  Plaintiff then got up and did probe checks.  Dkt. 20, at 5.  The Court Administrator stated that she did not see any evidence of Plaintiff being in any distress, and it appeared, in her view, that he fell asleep watching t.v. and did not pass out.  Dkt. 20, at 5.

In light of the fact Plaintiff stated that he "passed out," HR requested that Plaintiff provide a letter, job description, and form regarding his ability to do his job to his physician.  Dkt. 18, at 4.  Plaintiff gave the materials to Cesar Lirio, M.D.  Dkt. 18, at 4.  In a letter dated September 23, 2009, Dr. Lirio wrote the county's HR department stating that he had reviewed the JDO2 job description.  Dkt. 18, at 14.  Dr. Lirio stated that Mr. Adams had: 1) "elevated blood pressure" and 2) "chronic renal disease" controlled with medication.  Dkt. 18, at 14.  Dr. Lirio "saw no reason" that Plaintiff's medical conditions "would be a hindrance in doing his work as a juvenile detention officer."  Dkt. 18, at 14.  In addition to the letter, Dr. Lirio also

1   filled out a form at the county's and Mr. Adam's request.  Dkt. 18, at 15.  After reviewing the

2   JDO2 job description, Dr. Lirio opined that Plaintiff was medically able to perform all of the

3   essential functions of his position, including being able to "stay awake and alert and perform the

4   required probe checks to check on the welfare, safety, and security of the detained youth."  Dkt.

5   18, at 15.  Dr. Lirio indicated that Plaintiff did not need any accommodation to perform his job.

6   Dkt. 18, at 15.  Based on Dr. Lirio's opinion, the county found that Plaintiff did not need any

7   accommodations to perform his job.  Dkt. 18, at 5.

8        Plaintiff was found to have "failed to perform probe checks for a period of 44 minutes

9   and failed again to do probe checks for a time span of 2 hours and 18 minutes" on July 17, 2009.

10  Dkt. 20, at 4.  He was given a three day suspension as a result.  *Id.*

11            3.   Plaintiff's January 2010 Altercation with a Co-Worker

12        Plaintiff asserts that co-worker JDO2 Kevin Johnson, also an African-American, had a

13  history of aggressive behavior toward Plaintiff.  Dkt. 26, at 7.  Plaintiff states that many times

14  JDO2 Johnson would "clinch his fist to fight [Plaintiff] and stared [Plaintiff] down in the

15  hallway."  Dkt. 26, at 7.  Plaintiff states that he complained, but no one would help him.  *Id.*, at 7.

16        In January of 2010, JDO2 Johnson filed a report with the HR department that Plaintiff

17  had threatened him at work.  Dkt. 18, at 6.  During this incident, Plaintiff and JDO2 Johnson had

18  a disagreement.  Dkt. 22, at 11.  They exchanged words.  Dkt. 26, at 7.  Plaintiff asserts Johnson

19  called him a "n****r."  Dkt. 26, at 7.  Plaintiff felt Johnson wanted to fight, and Plaintiff said to

20  Johnson, "You better get out of my face talking your shit before you get knocked out."  Dkt. 22,

21  at 11.  Plaintiff stated that he reported the incident to a supervisor, Monty Clayton. Dkt. 26, at 7.

22  Although it is unclear from the record exactly what happened next, Plaintiff stated that he was

23  standing in the doorway of the supervisor's office and JDO2 Johnson was yelling, cursing at

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 4

1  Plaintiff and "wanting to fight," and the supervisor told Plaintiff to go and "just let me talk" to

2  JDO2 Johnson.  Dkt. 26, at 8.  Plaintiff states that Plaintiff "kept saying 'Let's just keep it on our

3  level!  Tell him to keep his attitude at the door!'"  Dkt. 26, at 8.  Plaintiff stated that the

4  supervisor said more than once in a 3-5 second span "let me talk to Kevin."  *Id.*

5       Plaintiff was suspended for 15 days for threatening JDO2 Johnson and failing to follow a

6  directive. Dkt. 20, at 5.  JDO2 Johnson received a reprimand for conduct unbecoming a County

7  employee.  Dkt. 20, at 5.

8                    4.  <u>Plaintiff is Taken to the Hospital in May of 2011</u>

9       On May 9, 2011, Plaintiff was taken to the hospital from work.  Dkt. 19, at 2.  Steve

10 Lawrence, his supervisor, stated that Plaintiff was conscious during the incident, but would not

11 respond to questions.  Dkt. 19, at 2.  JDO3 Lawrence stated that Plaintiff "just kept pointing to

12 his stomach and grimacing in pain."  Dkt. 19, at 2.

13                   5.  <u>Audit & HR Ranking Employees for Layoff</u>

14      In 2011, the Pierce County Juvenile Court underwent a performance audit at the request

15 of the Pierce County Council.  Dkt. 20.  The audit indicated that the population in the juvenile

16 detention facility had declined.  Dkt. 20, at 2.  At that time, the county also had a budget

17 shortfall.  *Id.*  As a result of both the decline in the detained youth population and the county

18 budget shortfall, the Pierce County Council reduced the Juvenile Court budget, and mandated

19 that seven JDO positions be eliminated.  *Id.*  The JDO positions were selected for elimination

20 because their duties involved direct custodial supervision for the detained youth.  *Id.*

21      The Court Administrator directed her staff to send HR a performance summary and

22 seniority list of the JDO2s, in order to get help in selecting employees for the layoff.  Dkt. 20, at

23 2. HR was asked to rank the employees considering the collective bargaining agreement and

24

documents that the Juvenile Court provided.  Dkt. 20, at 2.  In the meantime, four JDO2s either

voluntarily resigned or volunteered to be laid off, reducing the number of prospective JDO2

layoffs to three.  Dkt. 20, at 2.

There were 44 JDO2 employees who were considered for the 2011 layoff: 21 Caucasian

employees (48%); 16 African-American employees (36%); 4 Asian employees (9%), 2 Hispanic

employees (5%) and 1 Native American (2%).  Dkt. 18, at 7-8.

HR reviewed the CBA in place at the time.  Dkt. 17.  With respect to layoffs, the CBA

contained the following provision in Section "19.2 – Layoffs:"

> When the Employer determines it is necessary to reduce the work force in
> classifications within a bargaining unit, regular full-time and/or regular part-time
> employees will be laid off based upon experience, skill, ability, and qualifications
> to do the work, provided employees with the least seniority, which shall be based
> on hours compensated excluding overtime or other premium pays, will be laid off
> first when the above are equal.

Dkt. 17, at 14.  HR utilized an employee's disciplinary history as a factor in assessing "ability to

do the work."  Dkt. 17, at 2.  In making the layoff recommendation, HR considered the "nature

of the JDO2 job, the seriousness of the conduct underlying the discipline and not just the fact of

discipline, the number of times a JDO had been disciplined, whether the discipline was recent or

remote in time, and whether there was a relationship between the conduct and job performance."

Dkt. 17, at 3.

HR recommended the three JDO2s for the layoff:  1) Robert Coleman, an African-

American, 2) Plaintiff, an African-American, and 3) Nathan Oden, a Caucasian.  Dkt. 20, at 3.

Although they were not the most junior, each had disciplinary history.  Dkt. 17, at 3-4.  Mr.

Coleman had a 20-day suspension in 2011 for failing to properly monitor the youths, a 15-day

suspension in 2009 for failing to monitor the youths, a 3-day suspension in 2009 for failing to

conduct timely probe checks and a 2-day suspension in 2007 for failing to conduct timely probe

1  checks.  Dkt. 17, at 3.  Plaintiff had a 3-day suspension for failing to conduct the probe checks in

2  2009 and a 15-day suspension for threatening JDO2 Kevin Johnson in 2010.  Dkt. 17, at 4.

3  Nathan Oden had a 6-day suspension in 2010 because he was found to have intentionally misled

4  a supervisor.  Dkt. 17, at 4.  JDO2 Robert Smith was also considered for layoff because he

5  received a 20 day suspension for harassment in 2000.  Dkt. 17, at 3-4.  HR considered the ten

6  year passage of time as a mitigating factor in JDO2 Smith's favor, however, and ranked him

7  fourth.  Dkts. 17, at 4; 18, at 8; and 20, at 4.  Plaintiff, JDO2 Coleman and JDO2 Oden were laid

8  off from employment effective December 31, 2011.  Dkt. 20, at 5.

9        6.  <u>EEOC Charge</u>

10      According to the Defendants, on February 29, 2012, Plaintiff filed a charge of

11  discrimination with the EEOC.  Dkt. 18, at 6.

12      The Court notes that Plaintiff filed a pleading on March 19, 2014 (well after Defendants

13  filed their reply and after this motion was ripe for consideration), with a cover sheet entitled

14  "Exhibit #7 EEOC Complaint and Notice of Right to Sue" and a letter that purports to be from

15  the EEOC and a what appears to be a copy of Plaintiff's EEOC complaint.  Dkt. 35.  No

16  explanation is provided.

17        7.  <u>Appeal and Reinstatement</u>

18      Plaintiff, JDO2 Coleman and JDO2 Oden filed grievance through their Guild and the

19  Guild argued that the JDO2s with the least seniority should have been laid off first.  Dkt. 20, at 5.

20  The CBA provided for a four-step grievance process and the parties proceeded through the steps.

21  Dkt. 20, at 5.  The matter proceeded to binding arbitration before Gary Axon, who on January

22  18, 2013, ruled in favor of the Guild, reinstated Plaintiff, Coleman, and Oden.  Dkt. 20.  Mr.

23

24

1   Axon also made determinations regarding back pay, sick leave and vacation accruals.  Dkt. 20, at

2   8.

3   **B.  THE COMPLAINT IN THIS CASE**

4   On April 8, 2013, Plaintiff filed his Complaint in this case, alleging that "county

5   administrators" subjected him to racially discriminatory practices, violated the Americans with

6   Disabilities Act ("ADA"), violated the Family Medical Leave Act ("FMLA") from April 2005 to

7   December 2011, and violated his federal procedural due process rights.  Dkt. 1.  Plaintiff asserts

8   that the "discriminatory behavior exhibited by Pierce County administrators culminated" in the

9   termination of his employment in December of 2011.  *Id.*, at 4.  Plaintiff seeks damages and

10  attorneys' fees.  *Id.*

11  **C.  PENDING MOTION**

12  In the pending motion, Defendants move for summary judgment on Plaintiff's federal

13  claims.  It argues that Plaintiff cannot make a prima facie case of disparate treatment based on

14  race because he cannot show that a similarly situated non-African-American received more

15  favorable treatment with respect to the layoff decision.  *Id.*  It argues that Plaintiff cannot make a

16  prima facie case of disability discrimination because of the single TIA he alleges he suffered on

17  July 2009 or any other disability within the meaning of the ADA.  *Id.*  Further, Defendants argue

18  that they had a legitimate non-discriminatory reason for selecting Plaintiff for the lay off – his

19  discipline history.  *Id.*  Defendants argue that Plaintiff's race and disability based work place

20  hostile work environment claims must be dismissed because he cannot show that he suffered any

21  disability harassment or more than an isolated incident of racial harassment.  *Id.*  Defendants

22  move for summary dismissal of Plaintiff's retaliation claim, arguing that plaintiff cannot show a

23  causal link between any protected activity and an adverse employment action.  *Id.*  Defendants

24

1  argue that Plaintiff's FMLA claim should be dismissed because Plaintiff cannot show that

2  Defendants used his taking FMLA leave as a negative factor in an employment action.  *Id.*

3  Lastly, Defendants move for dismissal of Plaintiff's challenge to the arbitrator's award and claim

4  for violation of due process.  *Id*.

5      Plaintiff filed a response, which is largely a repetition of his Complaint.  Dkt. 25.

6  (Although Plaintiff later filed an Errata, removing the footnote on each page of his response

7  which states "Complaint" and the page number, the contents of the response remain unchanged.)

8  Dkt. 30.  The response is a long recitation of events without clear identification of which events

9  Plaintiff intends to use to support which of his claims.  Moreover, Plaintiff cites to only one case

10  - *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985) for the standard for summary judgment.

11  The Court is left to assess, as best it can, which factual predicates Plaintiff intended to support

12  which claims.

13      Defendants filed a reply and moved to strike certain items of Plaintiff's proffered

14  evidence.  Dkt. 32.  The motions are now ripe for decision.

15                              **II.      DISCUSSION**

16  **A. MOTION TO STRIKE**

17      Defendants move, pursuant to Western District of Washington Civ. R. P. 7(g) to strike

18  inadmissible hearsay evidence and evidence without a foundation contained in Plaintiff's

19  responsive pleadings.  Dkt. 32.

20      As to the six "exhibits" attached to Plaintiff's response (Dkts. 25-1 through 25-6), the motion

21  should be granted.  These pleadings are filed without any explanation.  They are entitled "Guild

22  Closing Argument," "Arbitrator Ruling and Award," "Don Malo Meeting Notes," "Staff

23  Changes Email," "Sleeping on the Job" and "Doctor's Notes."

24

1    Defendants' motion to strike the hearsay contained in the declarations submitted from

2    Plaintiff, Sean Wiggins, and Alex Smith should also be granted.  Plaintiff's Declaration contains

3    hearsay statements attributed to Dave McGovern, "staff," Shelly Malou (the Court

4    Administrator), Tam Phan, an unidentified doctor, Clarissa Fletcher, Joni Martin, Steve

5    Lawrence, Rebekah Vaughn, Kevin Johnson, Brent Long, the "county," and "Becky," (Dkt. 26)

6    and those portions should be stricken.  Sean Wiggin's Declaration contains hearsay attributed to

7    Dave McGovern, Plaintiff, Joni Martin, Clarissa Fletcher, Joe Carrillo, Steve Lawrence, Rebekah

8    Vaughn, Tam Phan, Brent Long, Kevin Johnson, and other unnamed individuals, (Dkt. 27) and

9    those portions should be stricken.  Alex Scott's Declaration contains hearsay attributed to Rich

10   Dallum, Plaintiff, Heather Vasquez, and Tam Phan (Dkt. 28) and those portions should be

11   stricken.

12   **B.  SUMMARY JUDGMENT – STANDARD**

13   Summary judgment is proper only if the pleadings, the discovery and disclosure materials on

14   file, and any affidavits show that there is no genuine issue as to any material fact and that the

15   movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

16   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

17   showing on an essential element of a claim in the case on which the nonmoving party has the

18   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

19   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

20   for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

21   (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

22   metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

23   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

24

1  requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

2  *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

3  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

4      The determination of the existence of a material fact is often a close question.  The court

5  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

6  e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, T.W. *Elect.*

7  *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

8  of the nonmoving party only when the facts specifically attested by that party contradict facts

9  specifically attested by the moving party.  The nonmoving party may not merely state that it will

10  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

11  to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

12  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

13  be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

14  **C.  TITLE VII – DISPARATE TREATMENT BASED ON RACE**

15      Under Title VII, an employer may not discriminate against a person with respect to his " . . .

16  terms, conditions, or privileges of employment" because of his "race, color, religion, sex, or

17  national origin."  42 U.S.C. § 2000e-2(a).  To establish a prima facie case of discrimination

18  under Title VII, a plaintiff must provide evidence that gives rise to an inference of unlawful

19  discrimination.  *Texas Dept. Of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  A Title VII

20  plaintiff alleging discriminatory treatment may prove his case through either direct or

21  circumstantial evidence, following the burden shifting framework in *McDonnell Douglas Corp.*

22  *v. Green*, 411 U.S. 792 (1973).  *Id.*

23

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 11

1    The first step of the *McDonnell Douglas* test requires that plaintiff establish a prima facie

2    case of discrimination. *Id.* A plaintiff must establish that (1) they belong to a protected class, (2)

3    they were qualified for the position (they were performing their job in a satisfactory manner), (3)

4    they were subjected to an adverse employment action, and (4) they were replaced by or were

5    treated more favorably than a person outside the protected class. *McDonnell Douglas* at 802.

6        Defendants concede that Plaintiff has met the first three parts of the prima facie test in so far

7    as the layoff is concerned. Dkt. 25. Defendants argue that Plaintiff cannot show, however, that a

8    similarly situated non-African American received more favorable treatment with respect to the

9    layoff decision because of Plaintiff's discipline history. *Id.* In order to be similarly situated, the

10   plaintiff and his proposed comparator must have engaged in acts of "comparable seriousness."

11   *Clayton v. Meijer*, 281 F.3d 605, 611 (6th Cir. 2002).

12       Plaintiff's discrimination claim should be dismissed. Plaintiff failed to point to any evidence

13   in the record that comparable non-African American person was treated more favorably than he

14   was for purposes of the layoff decision or for discipline. Plaintiff argues that others engaged in

15   conduct similar to his (failing to do probe checks and having an altercation with a coworker) and

16   were not disciplined to the same degree. Plaintiff fails to cite to any evidence in the record to

17   support this assertion other than his own self-serving claim that he caught others sleeping and

18   they were not "punished" for it. Plaintiff's self-serving statements alone are inadequate to defeat

19   summary judgment. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n. 6 (9th

20   Cir.2006). He makes no showing that he is privy to the other employee's personnel records.

21   Particularly as it relates to the altercation with Kevin Johnson, an African-American, Plaintiff

22   makes no showing that other non-African-Americans engaged in similar conduct and were

23   treated more favorably.

24

1   Even assuming that Plaintiff makes a *prima facia* case, his race discrimination claim should

2   still be dismissed upon review of the other two *McDonnell Douglas* steps.

3   In the second step of the *McDonnell Douglas* test, if the plaintiff succeeds in proving the

4   prima facie case, the burden shifts to the defendant to articulate some legitimate,

5   nondiscriminatory reason for the adverse employment action.  *Id*.

6   Defendants offer a non-disciminatory reason for his layoff – Plaintiff's disciplinary history.

7   Plaintiff makes no showing that HR official who was asked to rank the JDO2s for layoff was

8   aware of the race of the individual JDO2s.  The HR official stated that he viewed disciplinary

9   history as relevant in assessing the DJO2's "ability" to do their jobs under the CBA.  Dkt. 17, at

10   2.  Defendants further offer a non-discriminatory reason for the two instances of discipline –

11   Plaintiff was found to be sleeping on the job for the three day suspension and six months

12   afterward Plaintiff engaged in an altercation with a co-worker for the fifteen day suspension.

13   In the last step of the *McDonnell Douglas* test, "should the defendant carry this burden,

14   the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the

15   legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

16   discrimination." *McDonnell Douglas* at 802.

17   Plaintiff argues in his response that Shelly Maluo, the Court Administrator, and Dave

18   McGovern "knew that the layoffs were coming and Shelly spoke to staff about the fact of the

19   layoffs 1-2 years before they were to occur."  Dkt. 25.  Plaintiff argues that the county's use of

20   recent discipline in their assessment of an employee's "ability to do the work" (as required under

21   the collective bargaining agreement) in making the layoff decision was a way to "protect

22   employees of their choosing and they began doing out discipline to ensure other employees

23

24

1  would be let go." Dkt. 25.  He argues this was a pretext for eliminating blacks and retaining two

2  whites and one Asian.  Dkt. 25.

3    Plaintiff points to no evidence from which to draw this conclusion, however.  "A district

4  court has no independent duty to scour the record in search of a genuine issue of triable fact, and

5  may rely on the nonmoving party to identify with reasonable particularity the evidence that

6  precludes summary judgment."  *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir.

7  2010)(*internal citations omitted*).  District courts are under no obligation to undertake a

8  cumbersome review of the record on the nonmoving party's behalf.  *Id.*

9    Moreover, the record indicates that there were 44 JDO2 employees who were considered

10  for the 2011 layoff: 21 Caucasian employees (48%); 16 African-American employees (36%); 4

11  Asian employees (9%), 2 Hispanic employees (5%) and 1 Native American (2%). Dkt. 18, at 7-

12  8.  There were four employees with significant disciplinary history:  DJO2 Coleman, Plaintiff,

13  DJO2 Oden, and DJO2 Smith.  Coleman, Plaintiff and Oden were the only ones with recent

14  disciplinary history.  The record indicates that Robert Smith, an African-American, was not

15  selected for the layoff.  There is no evidence that DJO2 Smith was targeted for discipline during

16  the two years (2009-2011) before the layoff even though he had a received a 20 day suspension

17  ten years earlier and was African-American.  Moreover, while DJO2 Coleman, an African-

18  American, did receive discipline during this period, he had disciplinary incidents well before

19  then – starting in 2006.  DJO2 Oden, the Caucasian who was also selected for the layoff, was the

20  only other individual (aside from Plaintiff) who received serious discipline during 2009-2011.

21  Plaintiff has not pointed to evidence that County's proffered reasons to lay him off or discipline

22  him were not its true reasons, but were a pretext for discrimination.  Plaintiff's race

23  discrimination claim should be dismissed.

24

**D.  ADA CLAIMS**

Claims under the ADA are also analyzed using the *McDonnell Douglas* test.  *Hernandez v. Hughes Missile Sys. Co*., 362 F.3d 564, 568 (9th Cir.2004).  Accordingly, to state a prima facie case under the ADA, Plaintiff must show that (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual with a disability; and (3) he was discriminated against because of her disability.  *Smith v. Clark County School Dist*., 727 F.3d 950, 955 (9th Cir. 2013)(*citing Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir.1999)).

Plaintiff has failed to show that he is disabled within the meaning of the ADA, that he is a qualified individual with a disability or that the Defendants discriminated against him because of a disability.  Plaintiff testified that his ADA claim was based on his having a TIA on July 17, 2009.  Dkt. 22, at 8.  (This is the event for which he was infracted for falling asleep on the job, not doing probe checks, and received three days suspension.)  Plaintiff testified that he did not know at the time he had had a TIA and acknowledged that the County did not know it either.  Dkt. 22, at 8.  Plaintiff asserts in his response that he provided a doctor's note that states that he had a TIA, but there is no evidence in the record of the doctor's note or of this diagnosis.  Plaintiff's self-serving statements alone are inadequate to defeat summary judgment.  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n. 6 (9th Cir.2006).  He has not met his burden under the prima facie test and his claim should be dismissed.

**E.  HOSTILE WORK ENVIRONMENT**

"To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that [s]he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment."

1  *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir.  1998)(*citing Fuller v. City of Oakland,* 47

2  F.3d 1522, 1527 (9th Cir.1995)).

3      Defendants' motion to dismiss Plaintiff's hostile work environment claim, based on

4  either his race or disability, should be granted.  Plaintiff points to no evidence that he suffered

5  any harassment based upon a disability.

6      Furthermore, to the extent that Plaintiff bases his hostile work environment claim based

7  on race on the January 2010 altercation he and another African-American employee, JDO2

8  Kevin Johnson, got into where Plaintiff asserts Johnson called him a "n*****," his claim should

9  be dismissed.  Defendants properly point out that "Title VII requires aggrieved persons to file a

10  complaint with the EEOC "'within one hundred and eighty days after the alleged unlawful

11  employment practice occurred,'" 300 days if "proceedings are initially instituted with a state or

12  local government agency having the authority to grant or seek the requested relief." *Johnson v.*

13  *Lucent Technologies Inc.*, 653 F.3d 1000, 1008 n.7 (9th Cir. 2011)(*quoting* 42 U.S.C. § 2000(e0-

14  5(e)).  Plaintiff filed his EEOC charge on February 29, 2012 (Dkt. 18, at 6) more than two years

15  after the event.  Moreover, even if Plaintiff had satisfied the timeliness requirements set out in

16  Title VII, JDO2 Johnson was reprimanded for the event.  Plaintiff makes no showing that the

17  reprimand was not effective remedial action. *Westendorf v. West Coast Contractors of Nevada,*

18  *Inc.,* 712 F.3d 417 (9th Cir. 2013)(noting that an employer is liable for a hostile environment

19  created by a plaintiff's co-worker "if it knew or should have known about the misconduct and

20  failed to take prompt and effective remedial action").

21      To the extent that Plaintiff bases this (or any of his discrimination claims) on the 2005

22  letter of expectation and 2007 counseling that he received for having a low sick leave balance

23  (which plaintiff attributes to racial discrimination), the claim is also barred because these events

24

1  occurred even further back in time from the February 2012 EEOC charge, and so should be

2  dismissed.

3       Plaintiff fails to point to any other unwelcome "conduct of a racial nature" or conduct

4  based on his disability which occurred 300 days before his February 29, 2012 EEOC charge was

5  filed.  Further, he has not made out a prima facie case of a hostile work environment based on

6  either race or disability because the evidence will not support a finding that the any offensive

7  conduct was so severe or pervasive that it altered the conditions of his employment and "created

8  a work environment that a reasonable person would consider hostile or abusive." *Westendorf,* at

9  421.  His claim for hostile work environment based on race or disability should be dismissed.

10  **F.  RETALIATION**

11      To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a

12  protected activity, (2) an adverse employment action and (3) a causal link between the two."

13  *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*,

14  113 F.3d 1079 (9th Cir.1997)).  At that point, "the burden of production shifts to the employer to

15  present legitimate reasons for the adverse employment action. Once the employer carries this

16  burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason

17  advanced by the employer was a pretext. Only then does the case proceed beyond the summary

18  judgment stage." *Id.*

19       Defendants' motion to summarily dismiss Plaintiff's retaliation claim should be granted.

20  Plaintiff's response alleges that he was "harassed and retaliated against" for several years.  Dkt.

21  25, at 9.  Plaintiff points to an April 29, 2005 "letter of expectations" he received for having low

22  sick leave and another incident in February of 2007 when he was again counseled for having low

23  sick leave after his emergency surgery for a burst gall bladder.  *Id.,* at 9-13.  Plaintiff asserts that

24

1   he complained about the letter in 2005 and the counseling session in 2007.  *Id.*  Plaintiff asserts

2   "Mr. McGovern used his known disability and FMLA status as a vehicle for perpetuating his

3   discriminatory practice of harassing [Plaintiff] because of his race and disability."  Dkt. 25, at 13.

4   He further asserts that the letter of expectations and counseling session "were in retaliation for

5   his participation in meetings and grievances regarding his allegations of discrimination."  *Id.*

6   Defendants properly point out that Plaintiff is time-barred from basing his claims upon events

7   that occurred 300 days before the February 2012 EEOC charge was filed.  *National R.R.*

8   *Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)(holding that while the plaintiff alleged

9   that he suffered from numerous discriminatory and retaliatory acts from the date that he was

10  hired through the date that he was fired, only incidents that took place 300 days before the EEOC

11  charge was filed are actionable).  To the extent that Plaintiff alleges that he was selected for

12  layoff in retaliation for engaging in protected activity, his claim is not time-barred, however, and

13  an analysis of the prima facie test follows.

14      Plaintiff's retaliation claim, if based on the layoff, should be dismissed because Plaintiff has

15  failed carry his burden on the prima facia test.  First, he fails to point to any evidence that he

16  engaged in protected activity during the 300 days before the layoff.  Moreover, he has failed to

17  show any causal connection between any protected activity he engaged in the years prior to the

18  layoff (in December 2011) and his selection for the layoff.

19      Moreover, even if Plaintiff had met his burden, Defendants proffered reason for Plaintiff's

20  selection for the layoff – his disciplinary history - is a legitimate non-discriminatory reason for

21  his layoff.

22      Plaintiff points to no evidence which demonstrates that there is a genuine issue of material

23  fact as to whether the reason advanced by the employer was a pretext.  Plaintiff's repeated

24

1   assertion that he was retaliated against for complaining by being laid off does not meet his

2   burden.  "Merely denying the credibility of the employer's proffered reasons is insufficient to

3   withstand summary judgment."  *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010) (*citing*

4   *Lindsey v. Shalmy,* 29 F.3d 1382, 1385 (9th Cir. 1994)).  Plaintiff's retaliation claim should be

5   dismissed.

6   **G.  FMLA CLAIM**

7   A claim for a FMLA violation must be brought within two years if the violation is not

8   willful, and three years if the violation is willful.  29 U.S.C. § 2617(c)(1)-(2).

9   Plaintiff's FMLA claim should be dismissed.  This case was filed on April 4, 2013.  Dkt.

10  1.  According to the County's records, Plaintiff took FMLA leave on: 1) October 15, 2002 to

11  November 1, 2002; 2) August 24, 2006 to September 13, 2006; and 3) February 7, 2007 to

12  February 16, 2007.  Dkt. 18, at 7.  Plaintiff fails to assert any violation of the FMLA which

13  occurred after 2007.  His claim is time-barred and should be dismissed.

14  **H.  CLAIM CHALLENGING ARBITRATION AWARD/DUE PROCESS**

15  The Federal Arbitration Act ("FAA") creates "a body of federal substantive law of

16  arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Moses H.*

17  *Cone Mem'l Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 24 (1983).  The FAA applies to any

18  "written provision in ... a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.

19  Pursuant to the FAA, arbitration agreements are "valid, irrevocable and enforceable, save upon

20  such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

21  "Section 10 of the FAA provides that 'the United States court in and for the district wherein the

22  award was made may make an order vacating the award upon the application of any party to the

23  arbitration' in any of four enumerated situations:" where the award was procured by fraud,

24

1    evident partiality, arbitrator misconduct, or where the arbitrator exceeded their authority.

2    *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401 (9th Cir. 2011).

3       Defendants motion for summary dismissal of Plaintiff's claim challenging the arbitration

4    award and for a "due process violation" (Dkt. 16) should be granted.  Plaintiff does not

5    meaningfully respond to the motion to dismiss this/these claims, although he does say in his

6    response that he is adopting the "winning" arguments raised by the Guild during the arbitration

7    proceedings regarding the due process violation.  Dkt. 25, at 8-9.  Plaintiff attached to the civil

8    cover sheet (which is normally filed with the Complaint) a pleading purporting to be the decision

9    of the arbitrator.  Dkt. 2-4.  The decision of the arbitrator provides:

10
11
12
13
14

> Regarding the Guild's argument that the use of prior discipline as a basis for
> termination of Grievants resulted in double jeopardy and violated the just cause
> requirement in the Collective Bargaining Agreement, I disagree.  The evidence
> shows Grievants were laid off due to the necessity of the Employer to reduce the
> workforce.  Given that the employer has proved that the layoffs were a bona fide
> reduction in force, I agree with the Employer the doctrine of double jeopardy is
> not triggered because a bona fide reduction in force cannot be construed as
> punishment or discipline.

14    Dkt. 2-4, at 21.  Plaintiff's renewed challenge to the arbitrator's award regarding his due process

15
16    claim should be dismissed.  Plaintiff has failed to show that any of the enumerated situations in

16
17    Section 10 of the FAA apply so that he may challenge the arbitrator's decision.  His claim

17
18    challenging the arbitrator's award and/or for due process should be dismissed.

18
19                      **III.     ORDER**

19
20       It is **ORDERED** that:

20
21         • Defendants' Motion to Strike (Dkt. 32) **IS GRANTED;**

21
22         • Defendants' Motion for Summary Judgment (Dkt. 16) **IS GRANTED;** and

22
23         • Plaintiff's remaining claims **ARE DISMISSED.**

23
24

1        The Clerk is directed to send uncertified copies of this Order to all counsel of record and

2    to any party appearing *pro se* at said party's last known address.

3        Dated this 20th day of March, 2014.

4

5

_____
ROBERT J. BRYAN
6    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 21